Mr. Joel Edward Maxwell Interim Miami City Attorney 444 Southwest Second Avenue, Suite 945 Miami, Florida 33130-1910
Dear Mr. Maxwell:
On behalf of the Miami Sports and Exhibition Authority, you ask substantially the following question:
Are rent revenues received by the Miami Sports and Exhibition Authority from leasing the land on which the Miami Arena is situated considered to be convention development tax moneys subject to the restrictions placed on such moneys by section212.0305(4)(b)2., Florida Statutes, or are such proceeds "other related sources of income" not subject to the same restrictions?
In sum:
Rent revenues received by the Miami Sports and Exhibition Authority from leasing the land on which the Miami Arena is situated are not convention development tax moneys subject to the restrictions placed on such moneys by section 212.0305(4)(b)2., Florida Statutes. Such revenues, however, must be used to carry out the duties and functions of the Authority.
You state that the Miami Sports and Exhibition Authority (MSEA) was created by the City of Miami as an independent and autonomous agency of the city pursuant to section 212.057, Florida Statutes 1985, which authorized the levy of a convention development tax. Section 212.057 was repealed in 1986,[1] and provisions for the levy of convention development taxes are now contained in section212.0305, Florida Statutes.
The purpose of the MSEA is to promote sports, conventions, and exhibitions to the greatest extent possible, to generate and further community support to achieve this purpose, and to endeavor to attract professional sports franchises to utilize facilities within the city.[2] You state that the MSEA has the authority to acquire, construct, equip, maintain, and operate exhibition halls, arenas, convention centers, coliseums, auditoriums, recreation centers, gymnasiums, and related buildings and may acquire in its own name real and personal property necessary to achieve its purposes.
According to your letter, the MSEA is funded by convention development tax proceeds and other revenue derived from the operation of the Miami Arena and related facilities. You state that the designation of the MSEA for this purpose was a condition precedent to the city receiving such tax proceeds under section212.0305, Florida Statutes.[3] Proceeds from the convention development tax levy were used by MSEA to acquire the land on which the Miami Arena was built in 1986, and the authority derives approximately $300,000 annually in rent from the leasing of the land to the arena.
The Convention Development Tax Act, section 212.0305, Florida Statutes, authorizes certain counties to levy a three percent convention development tax on transient rentals. Section212.0305(4)(b)1., Florida Statutes, provides that "[t]he proceeds of this levy shall be known as the charter county convention development tax." Pursuant to section 212.0305(4)(b)2.,
"All charter county convention development moneys, including any interest accrued thereon, received by a county imposing the levy shall be used as follows:
a. Two-thirds of the proceeds shall be used to extend, enlarge, and improve the largest existing publicly owned convention center in the county.
b. One-third of the proceeds shall be used to construct a new multipurpose convention/coliseum/ exhibition center/stadium or the maximum components thereof as funds permit in the most populous municipality in the county.
c. After the completion of any project under sub-subparagraph a., the tax revenues and interest accrued under sub-subparagraph a. may be used to acquire, construct, extend, enlarge, remodel, repair, improve, plan for, operate, manage, or maintain one or more convention centers, stadiums, exhibition halls, arenas, coliseums, or auditoriums, and may be used to acquire and construct an intercity light rail transportation system as described in the Light Rail Transit System Status Report to the Legislature dated April 1988, which shall provide a means to transport persons to and from the largest existing publicly owned convention center in the county and the hotels north of the convention center and to and from the downtown area of the most populous municipality in the county as determined by the county.
d. After completion of any project under sub-subparagraph b., the tax revenues and interest accrued under sub-subparagraph b. may be used, as determined by the county, to operate an authority created pursuant to subparagraph 4. or to acquire, construct, extend, enlarge, remodel, repair, improve, operate, or maintain one or more convention centers, stadiums, exhibition halls, arenas, coliseums, auditoriums, golf courses, or related buildings and parking facilities in the most populous municipality in the county.
e. For the purposes of completion of any project pursuant to this paragraph, tax revenues and interest accrued may be used:
(I) As collateral, pledged, or hypothecated for projects authorized by this paragraph, including bonds issued in connection therewith; or
(II) As a pledge or capital contribution in conjunction with a partnership, joint venture, or other business arrangement between a municipality and one or more business entities for projects authorized by this paragraph."
Section 212.0305(4)(b)2., Florida Statutes, initially refers to all charter county convention development moneys, including interest accrued thereon. An examination of the statute, however, indicates that the term refers to the proceeds of the tax levy and interest accrued on such proceeds. In setting forth the permissible uses for charter county convention development moneys, the statute uses the terms proceeds and tax revenues interchangeably.[4]
Thus, the provisions of section 212.0305(4)(b)2., Florida Statutes, setting forth the authorized uses for charter county development moneys, including accrued interest, appear to relate to convention development tax proceeds or revenues and accrued interest on such funds. Where the Legislature has prescribed the manner in which a thing should be done, that is, in effect, a prohibition against its being done in any other way. The specific provisions in section 212.0305, Florida Statutes, limit the use of such revenues generated from the convention development tax to the purposes specified therein.[5]
Revenues derived from rent of the facilities are not tax revenues or proceeds from the tax levy and thus would not appear to be subject to the limitations contained in section 212.0305(4)(b)2., Florida Statutes. The statute recognizes that the MSEA may receive other revenues. Section 212.0305(4)(b)4.a.(I), Florida Statutes, in providing for the creation of an authority such as MSEA, states that such entity has the sole power to "administer and disburse such proceeds and any other related source of revenue." Additionally, it may invest and reinvest "the proceeds from the convention development tax and any other revenues generated by theauthority in the same manner that the municipality in which the authority is located may invest surplus funds."[6] (e.s.) Such revenues, however, are subject to the limitations and conditions imposed upon MSEA and must be used to carry out MSEA's duties and functions.
Accordingly, I am of the opinion that rent revenues received by the Miami Sports and Exhibition Authority from leasing the land on which the Miami Arena is situated are not convention development tax moneys subject to the restrictions placed on such moneys by section 212.0305(4)(b)2., Florida Statutes. Such revenues, however, must be used to carry out the duties and functions of the Authority.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 71, Ch. 86-152, Laws of Florida.
[2] Section 2-1012, Miami City Code.
[3] See, s. 212.0305(4)(b)4.a., Fla. Stat., providing that before a charter county enacts an ordinance imposing the levy, the county shall notify the governing body of each municipality in which certain projects are to be developed and as a condition precedent to receiving funding, the governing bodies of such municipalities shall designate or appoint an authority that has sole power to approve the concept, location, program, and design of the facilities and to disburse "such proceeds and any other related source of revenue."
[4] See, e.g., s. 212.0305(4)(b)2.b., Fla. Stat., stating one-third of the proceeds shall be used to construct a new multipurpose convention/coliseum/exhibition center/stadium in the most populous municipality in the county while s.212.0305(4)(b)2.d., Fla. Stat., states that after completion of any project under sub-subparagraph b., the tax revenues and interest may be used to operate the authority created pursuant to subparagraph 4., or to construct, improve, or operate convention centers, stadiums, exhibition halls, arenas, coliseums, auditoriums, golf courses or related buildings and parking facilities in the county's most populous city.
[5] See, e.g., Alsop v. Pierce, 19 So.2d 799, 805 (Fla. 1944) (when the Legislature has prescribed the mode, that mode must be followed); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[6] Section 212.0305(4)(b)4.c., Fla. Stat.